UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:05-CV-345-MU

| | |
|---|---|
| BELLSOUTH TELECOMMUNICATIONS, INC., ) ) ) Plaintiff, ) v. ) ) NORTH CAROLINA UTILITIES ) COMMISSION; JO ANNE SANFORD, ) Chairman; ROBERT K. KOGER, ) Commissioner; ROBERT V. OWENS, ) JR., Commissioner; SAM J. ERVIN, IV, ) Commissioner; LORINZO L. JOYNER, ) Commissioner; JAMES Y. KERR, II, ) Commissioner; and HOWARD N. LEE, ) Commissioner (in their official capacities ) as Commissioners of the North Carolina ) Utilities Commission), ) ) Defendants. ) ) | ORDER |

**THIS MATTER** is before the Court on Plaintiff BellSouth Telecommunications, Inc.'s ("BellSouth") Motion for Temporary Restraining Order and Preliminary Injunction, [file doc. 10], and Memorandum in Support, both filed August 2, 2005. Also on August 2, 2005, this Court entered an Order granting BellSouth's Motion for a Temporary Restraining Order and setting a hearing for this matter which was held on August 11, 2005 at 2:00 p.m. While the North Carolina Utilities Commission (the "Commission") and the Commissioners (collectively referred to as "Defendants") named above did not file a written Response to the Motion for Preliminary Injunction, defense counsel for both did attend the hearing, although only in her

capacity as counsel to the Commissioners.[1]  Having heard and considered the arguments of BellSouth and the Commissioners, this matter is ripe for ruling by the Court.  For the reasons stated below, the Court hereby **GRANTS** BellSouth's Motion for Preliminary Injunction.

## I.  FACTUAL AND PROCEDURAL HISTORY

This case is centered around the interpretation of several provisions of the Telecommunications Act of 1996 (the "Act").  In the spirit of fostering competition, the Act imposes several requirements on incumbent local exchange carriers ("ILECs"), like BellSouth, to make their retail telecommunications services available to competing local providers ("CLPs") at discounted wholesale rates.  *See* 47 U.S.C. § 251(c)(4)(A).  Pursuant to 47 U.S.C. § 252(d)(3), State commissions determine the wholesale rates on the basis of the ILEC's retail rates, excluding any portion attributable to marketing, among other things.  In practical terms, it is both the Commission and the market which set the wholesale rates available to CLPs.  ILECs propose a wholesale rate bearing in mind what the market will tolerate, but before they can sell these telecommunications services, the Commission must approve the rates.

As explained above, many factors influence the value of the wholesale rates.  And, as would be expected, the Federal Communications Commission ("FCC") has weighed in on the issue of what should be considered when valuing wholesale rates.  Specifically, and of importance to the outcome of this matter, the FCC has found that promotional offerings that are in effect for more than ninety days essentially become the retail rate from which the wholesale rate is determined.  *In the Matter of Implementation of the Local Competition Provisions in the*

---

[1] Defense counsel stated on the record that she was only appearing in her capacity as counsel to the Commissioners because the North Carolina Utilities Commission seeks to have this action dismissed against it without making an appearance in the matter.

*Telecommunications Act of 1996*, (CC Docket 96-98); First Report and Order, FCC No. 96-325, 11 FCC Rcd 15499 (rel. August 8, 1996), ¶ 948.  This point is further clarified through the negative implication of 47 C.F.R. § 51.613(2)(I), which states that "promotions" lasting less than ninety days are not considered when determining the wholesale rate.

The dispute between BellSouth and the Defendants arose when the Defendants issued a December 22, 2004 Order Ruling on Motion Regarding Promotions and a June 3, 2005 Order Clarifying Ruling on Promotions and Denying Motions for Reconsideration and Stay (collectively the "Resale Orders").  The Resale Orders found that incentives, such as gift cards, that are in effect for more than ninety days "are in fact promotional offers subject to the FCC's rules on promotions."  On the other hand, BellSouth argued in oral argument that gift cards and other such giveaways are not telecommunications services, and as such are not regulated by the Act.

More specifically, BellSouth cites to the FCC's definition of "promotions" to make the argument that items such as gift cards are in fact *marketing* incentives, which are specifically excluded from the valuation of wholesale rates by 47 U.S.C. § 252(d)(3).  (Pl.'s Mem. at 11.) The FCC has defined "promotions" to include "price discounts from standard offerings that will remain available for resale at wholesale rates, i.e., temporary price discounts."  *In the Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996* (CC Docket No. 96-98); First Report and Order, FCC No. 96-325, 11 FCC RCD 15499, (rel. Aug. 8, 1996), ¶ 948.

Pursuant to 47 U.S.C. § 252(e)(6), BellSouth has brought the matter to this Court to determine whether the Resale Orders are in fact contrary to the statutory provisions of the Act.

3

At this stage in the proceedings, BellSouth seeks a Preliminary Injunction prohibiting the Defendants from enforcing those provisions of the Resale Orders which would require ILECs to take into consideration the value of gift cards and other giveaways in the same manner that rate discounts which last for longer than ninety days are considered when arriving at the wholesale rate for telecommunications services for CLPs.

## II.  DISCUSSION

The "balance of hardships" test is used to determine the propriety of preliminary injunctive relief.  *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 196 (4th Cir. 1977).  This test weighs the following four factors: (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendants if the requested relief is granted; (3) the likelihood that plaintiff will succeed on the merits; and (4) the public interest.  *Id.*  Further, the plaintiff bears the burden of establishing that each of the four elements supports granting the injunction.  *Direx Israel, Ltd. v. Breakthrough Medical Corp.*, 952 F.2d 802, 812 (4th Cir. 1992).

**A.    Irreparable Harm to BellSouth in the Absence of a Preliminary Injunction**

The question of irreparable harm to the plaintiff is the first factor to be considered in a motion for preliminary injunction.  *Id.*  If a plaintiff cannot establish that irreparable harm is likely to occur in the absence of a preliminary injunction, that failure alone is sufficient to deny injunctive relief.  *Manning v. Hunt*, 119 F.3d 254, 266 (4th Cir. 1997).  "Moreover, the required 'irreparable harm' must be 'neither remote nor speculative, but actual and imminent.'" *Direx*, 952 F.2d at 812 (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)).  However, as the balance tips in favor of finding irreparable harm to plaintiff, there is a

lesser need for plaintiff to establish likelihood of success on the merits. *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir. 1991).

In the instant case, BellSouth has established that it will suffer actual, imminent, and irreparable harm if the Court does not enter the requested preliminary injunction. BellSouth represented to the Court that implementation of the Resale Orders would require them to create significant changes in their marketing structure. The marketing efforts in North Carolina would be carried out in a substantially different manner than efforts in other states where BellSouth does business. Putting aside the large financial burden of this effort, the lasting impact that this two-tiered marketing could have on customer loyalty and BellSouth's goodwill in North Carolina cannot be understated. A North Carolina customer visiting Georgia would understandably become rather disgruntled to learn that the same benefits were not offered to him as were offered to BellSouth customers in Georgia.

Further, there would be the same loss of customer loyalty when North Carolina residents learn that many of the CLPs are able to offer much better incentives than BellSouth. Customer loyalty is not the type of loss that can be made whole with a court order at the end of a lawsuit. Additionally, there is the direct financial loss which will occur if the wholesale rates are suddenly decreased to comply with the Resale Orders. The beneficiaries of this decrease, the CLPs, are not even a party to this action.

In sum, if the Court does not enter a preliminary injunction, Defendants' ruling will result in irreparable harm to BellSouth.

**B.     Likelihood of Harm to Defendants if Preliminary Injunction is Granted**

The Court finds that if the Resale Orders are implemented, the harm to BellSouth

certainly outweighs any harm to Defendants. In fact, the Defendants were unable to name any harm that they would incur as a result of a Preliminary Injunction. Defendants pointed out that the fourth factor, the public interest, should be considered in this step as well due to the fact that Defendants represent the public interest. However, there is no clear argument that the public interest would not be best served by granting this Preliminary Injunction. The Court has not been convinced that the Resale Orders will actually promote competition. At this point in the proceedings, there appears to be a valid argument that the Resale Orders are actually going to hinder competition in North Carolina. It is precisely the intent of the Act to foster competition for the public good.

Therefore, the likelihood of harm to BellSouth if the injunction is not granted significantly outweighs any possible harm to Defendants resulting from the imposition of the injunction.

**C.     BellSouth's Likelihood of Success on the Merits of its Claims**

Since the Court finds that BellSouth would suffer irreparable harm in the absence of a preliminary injunction, the Court will not discuss in detail whether BellSouth has a likelihood of success on the merits of its claims. The Court notes, however, that BellSouth has sufficiently convinced the Court that this novel issue of law merits further review.

**D.     Public Interest**

As discussed above, the Court further finds that the public interest is served by the issuance of the requested injunction. The impact of the Resale Orders would result in North Carolina residents being treated differently than similarly situated residents of other states through the interpretation of a federal law.

In conclusion, the Court finds that the entry of a preliminary injunction is necessary to protect BellSouth from actual, imminent and irreparable harm. Such harm to BellSouth significantly outweighs any harm that Defendants may incur as a result of the entry of the injunction.

E.    **Rule 65(c) of the Federal Rules of Civil Procedure**

The Federal Rules of Civil Procedure state that "[n]o . . . preliminary injunction shall issue except upon the giving of security by the applicant, in such sum the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). As noted in Rule 65, the amount of bond is within the discretion of the Court. *Maryland Dept. of Human Resources v. U.S. Dept. of Agriculture*, 976 F.2d 1462, 1483 (4th Cir. 1992). The Court here finds that a bond of $100 is sufficient to cover Defendant's costs or damages should it later be determined that Defendant was wrongfully enjoined.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Preliminary Injunction is hereby **GRANTED**. Pending a trial on the merits, Defendants are enjoined and restrained from enforcing Conclusion No. 5 of the Commission's December 22, 2004 Order Ruling on Motion Regarding Promotions, *In the Matter of Implementation of Session Law 2003-91, Senate Bill 814 Titled "An Act to Clarify the Law Regarding Competitive and Deregulated Offerings of Telecommunications Services*," Docket No. P-100, Sub-72b as well as the Commission's Conclusions regarding Resale Obligations and One-Time Gift Promotions in its June 3, 2005 Order Clarifying Ruling on Promotions and Denying Motions for Reconsideration and Stay, *In the Matter of Implementation of Session Law 2003-91, Senate Bill 814 Titled "An Act to Clarify*

*The Law Regarding Competitive and Deregulated Offerings of Telecommunications Services*," Docket No. P-100, Sub-72b (pp. 5-7, therein).

      **IT IS FURTHER ORDERED** that BellSouth shall post a bond of $100.00.

**Signed: August 12, 2005**

*/s/ Graham C. Mullen*

Graham C. Mullen
Chief United States District Judge