UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:05-CV-345-MU

| | |
|---|---|
| BELLSOUTH TELECOMMUNICATIONS, INC., </br></br>Plaintiff, </br>v. </br></br>NORTH CAROLINA UTILITIES COMMISSION; JO ANNE SANFORD, Chairman; ROBERT K. KOGER, Commissioner; ROBERT V. OWENS, JR., Commissioner; SAM J. ERVIN, IV, Commissioner; LORINZO L. JOYNER, Commissioner; JAMES Y. KERR, II, Commissioner; and HOWARD N. LEE, Commissioner (in their official capacities as Commissioners of the North Carolina Utilities Commission), </br></br>Defendants. | </br></br></br></br></br></br></br></br>ORDER |

**THIS MATTER** is before the Court on the North Carolina Utilities Commission's (the "Commission") Motion to Dismiss the Complaint, (file doc. 17), filed on August 10, 2005, and the Commissioners' Motion to Dismiss for Improper Venue, (file doc. 14), filed on August 8, 2005. BellSouth Telecommunications, Inc. ("BellSouth") filed its Response in Opposition to the Motion to Dismiss for Improper Venue on August 11, 2005. The Commissioners replied to this response on August 22, 2005. On that same day, BellSouth filed its Notice of Voluntary Dismissal Without Prejudice as to the North Carolina Utilities Commission. On August 25, 2005, the Commissioners filed an addendum to their reply in the venue issue. And, on August 26, 2005, BellSouth filed its Sur-Reply Brief in Opposition to the Commissioners' Motion to Transfer Venue.

Accordingly, the Court notes that no action is needed by it on the Commission's Motion to Dismiss in light of BellSouth's Voluntary Dismissal Without Prejudice as to the Commission. Further, the Commissioners' Motion to Dismiss for Improper Venue is ripe for disposition. For the reasons discussed below, this Court will **DENY** the Commissioners' Motion to Dismiss for Improper Venue.

**I. FACTUAL AND PROCEDURAL HISTORY**

The dispute between BellSouth and the Commissioners arose when the Commissioners issued a December 22, 2004 Order Ruling on Motion Regarding Promotions and a June 3, 2005 Order Clarifying Ruling on Promotions and Denying Motions for Reconsideration and Stay (collectively the "Resale Orders"). Pursuant to 47 U.S.C. § 252(e)(6), BellSouth has brought the matter to this Court to appeal the Commissioners' action in issuing the Resale Orders. A Preliminary Injunction was granted in BellSouth's favor at a hearing on August 11, 2005, which was followed by a written Order on August 12, 2005. At this stage in the proceeding, the only outstanding motion is the Commissioners' request for a change of venue from this District to the Eastern District of North Carolina. Originally, the Commissioners' also sought to have this action dismissed due to improper venue; however, that request was denied by this Court in an Order dated August 12, 2005. Accordingly, the Court's discussion in this Order centers around whether a change of venue is proper.

The Commissioners, by virtue of the fact that they have been sued in their official capacity only, reside in the place where they conduct their official duties – Raleigh, North Carolina. (Comm'r Mot. at ¶ 2.) The Resale Orders complained about here were both issued in Raleigh, North Carolina. (Comm'r Mot. at ¶ 4.) Thus, the Commissioners argue that the Eastern

2

District is the proper forum for this matter. On the other hand, BellSouth argues that this District is also proper because if the Commissioners' Resale Orders are allowed to stand, they "will have the most substantial impact and effect on BellSouth in the Western District of North Carolina." (BellSouth Resp. at 4.) Over fifty-two percent of BellSouth's resale customers in North Carolina reside within the Western District. (BellSouth Resp. at 4.) BellSouth's North Carolina headquarters are located in Charlotte. (BellSouth Resp. at 7.)

**II. ANALYSIS**

After reviewing all of the pleadings and the relevant law, this Court is convinced that no sound argument can be made that venue in this District is improper; rather, it is clear that the Commissioners seek to have this case transferred to the Eastern District of North Carolina on what amounts to *forum non conveniens* grounds. It is well established that the moving party carries the burden of establishing that a case should be transferred to another venue. *Uniprop Mfrs. Hous. Cmtys. Income Fund II v. Home Owners Funding Corp. of America*, 753 F. Supp. 1315, 1322 (W.D.N.C. 1990). This Court has consistently recognized that this burden is a heavy one and the decision to transfer is left to the sound discretion of the trial court. *Id.* (citations omitted).

In determining whether to transfer a case, the Court balances the convenience of the parties and witnesses, as well as the interests of justice. *Id.* "Because the movant assumes a heavy burden when making a motion to transfer, the motion will not be granted if a transfer would merely shift the inconvenience from the defendant to the plaintiff, or if the equities lean but slightly in favor of the movant after all factors are considered." *Id.* (*citing Phillips v. S. Gumpert Co. Inc.*, 719 F. Supp. 446, 727 (W.D.N.C. 1986)). Moreover, this Court has long held

that the plaintiff's choice of forum should be accorded great weight. *Id.* (citations omitted). "'[A] plaintiff's choice of proper forum is a paramount consideration in any determination of a transfer request, and that choice . . . should not be lightly disturbed.'" *Id.* (*quoting Datasouth Computer Corp. v. Three Dimensional Techs., Inc.*, 719 F. Supp. 446, 451 (W.D.N.C. 1989)).

This Court has outlined eleven factors that should be balanced by the district court when deciding whether a matter will be transferred: (1) the plaintiff's initial choice of forum; (2) the residence of the parties; (3) the relative ease of access of proof; (4) the availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses; (5) the possibility of a view; (6) the enforceability of a judgment, if obtained; (7) the relative advantages and obstacles to a fair trial; (8) other practical problems that make a trial easy, expeditious, and inexpensive; (9) the administrative difficulties of court congestion; (10) the interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) the avoidance of unnecessary problems with conflict of laws. *Uniprop*, 753 F. Supp. at 1322 (*citing Commercial Equip. Co. v. Barclay Furniture Co.*, 738 F. Supp. 974, 977 (W.D.N.C. 1990)).

This Court finds that the balancing of the *Uniprop* factors weigh in favor of not transferring this matter to the Eastern District. As always, the plaintiff's initial choice of forum is given great weight. Next, in this matter, the residence of the parties is not a particularly compelling factor for either side. Further, the relative ease of access of proof in this case is neutral as well. As both parties have stated in their pleadings, this matter is an appeal and as such the "proof" is all going to be on paper. It is unlikely that any witnesses will ever be asked to

appear in person, but even if they were, the drive between Charlotte and Raleigh is just over two hours. Neither party and no witnesses would be seriously inconvenienced by participating in this litigation at either site. The other factors are similarly neutral or irrelevant to this determination. This matter can be just as easily and efficiently tried in the Western District as it would be in the Eastern District, considering this and the fact that BellSouth chose the Western District for its forum, the Commissioners' Motion to Transfer Venue is denied.

## III. CONCLUSION

**IT IS THEREFORE ORDERED** that the Commissioners' Motion to Dismiss for Improper Venue be **DENIED**, (file doc. 14). Further, the Court notes that the North Carolina Utilities Commission's Motion to Dismiss the Complaint, (file doc. 17), requires no action by this Court due to BellSouth's Voluntary Dismissal Without Prejudice as to the Commission.

**Signed: September 29, 2005**

Graham C. Mullen
Chief United States District Judge