IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:05CV345-MU

| | |
|---|---|
| BELLSOUTH TELECOMMUNICATIONS, INC.,   )<br>  )<br>  )<br>Plaintiff,   )<br>  )<br>vs.   )<br>  )<br>JO ANNE SANFORD, Chairman; ROBERT K. )<br>KOGER, Commissioner; ROBERT V. OWENS, )<br>JR., Commissioner; SAM J. ERVIN, IV,   )<br>Commissioner; LORINZO L. JOYNER,   )<br>Commissioner; JAMES Y. KERR, II,   )<br>Commissioner; and HOWARD N. LEE,   )<br>Commissioner (in their official capacities as )<br>Commissioners of the North Carolina Utilities )<br>Commission),   )<br>  )<br>Defendants.   )<br>_____) | ORDER |

This matter is before the court upon cross-motions for summary judgment filed by

Plaintiff BellSouth Telecommunications, Inc. ("BellSouth") and the Defendant Commissioners

of the North Carolina Utilities Commission (the "Commissioners"). It appears to the court that

there are no genuine issues of material fact, and this matter is now ripe for disposition.

**BACKGROUND**

BellSouth is an incumbent local exchange carrier ("ILEC").  Under the

Telecommunications Act of 1996 (the "Act"), BellSouth, as an ILEC, is required to offer its

telecommunications services to competing local providers ("CLPs") for resale at  wholesale rates

established by the North Carolina Utilities Commission (the "NCUC").  Specifically, the Act

1

requires ILECs to "offer for resale at wholesale rates any telecommunications service that the carrier provides at retail to subscribers who are not telecommunications carriers." 47 U.S.C. § 251(c)(4). Wholesale rates are determined by State commissions "on the basis of retail rates charged to subscribers for the telecommunications service requested, excluding the portion thereof attributable to any marketing, billing, collection, and other costs that will be avoided by the local exchange carrier."[1] 47 U.S.C. § 252(d)(3).

The Federal Communications Commission ("FCC") has determined that the Act's resale obligations extend to promotional price discounts offered on retail communications services. However, the FCC has expressly limited the scope of the term "promotions" to "price discounts from standard offerings that will remain available for resale at wholesale rates, i.e., temporary price discounts." *In the Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996,* (CC Docket No. 96-98); First Report and Order, FCC No. 96-325, 11 FCC Rcd 15499, (rel. Aug. 8, 1996), ¶ 948 ("First Report and Order"). The FCC further concluded that "short term promotional prices," which are defined as "promotions of up to 90 days," "do not constitute retail rates for the underlying services and are not subject to the wholesale rate obligation." Id. at ¶¶ 949 & 950. Thus, promotional prices offered for a period of 90 days or less need not be offered to resellers at a wholesale discount, whereas promotional prices offered for periods greater than 90 days must be offered for resale at the wholesale rate.

BellSouth uses certain marketing incentives in all nine states in which it operates. These incentives include gift cards or other one-time giveaways that encourage customers to subscribe

---

[1]The NCUC has established that CLPs may purchase BellSouth's retail telecommunications services in North Carolina at a 21.5% wholesale discount less the retail price for business services and for 17.6% less than the retail price for residential services.

to BellSouth's telecommunications services. CLPs that compete with BellSouth regularly employ similar marketing practices. These marketing incentives are redeemable only for unaffiliated, that is, non-BellSouth, goods or services. Because these types of marketing incentives originate from unaffiliated companies, BellSouth is unable to track their usage or redemption rates.

In June of 2004, the Public Staff of the NCUC filed a Motion for Order Concerning Eligibility for One-Day Notice and ILECs' Obligations to Offer Promotions to Resellers. One of the issues on which the Public Staff sought guidance was the following: "If a [local exchange carrier] offers a benefit in the form of a check, a coupon for a check, or anything else of value for more than ninety days to incent subscription or continued subscription to a regulated service, is it required that the benefit be offered to resellers in addition to the reseller discount?" The Public Staff took the position that marketing incentives such as gift cards, checks, etc. "effectively" constitutes a discount on telecommunications services and are subject to resale obligations. On December 22, 2004, the NCUC issued its Order Ruling on Motion Regarding Promotions (the "First Resale Order"), holding that marketing incentives "are in fact promotional offers subject to the FCC's rules on promotion," and that "in order for a gift card type promotion not to require an adjustment to the resale wholesale rate (caused by the fact that the retail price has in effect been lowered), such a promotion must be limited to 90 days." While acknowledging that marketing incentives "are not discount service offerings *per se* because they do not result in a reduction of the tariffed retail price charged for the regulated service at the heart of the offerings," the NCUC nevertheless concluded that a marketing incentive "reduces the subscriber's cost for the service by the value received in the form of a gift card or other

giveaway." First Resale Order, p. 11. Thus, the NCUC stated, "The tariffed retail rate would, in essence, no longer exist, as the tariffed price minus the value of the gift card received for subscribing to the regulated service, i.e., the promotional rate, would become the 'real' retail rate." Id.

On February 18, 2005, BellSouth filed a Motion for Reconsideration or, in the Alternative, for Clarification, and for a Stay of the Commission's December 22, 2004 Order. On June 3, 2005, the NCUC issued its Order Clarifying Ruling on Promotions and Denying Motions for Reconsideration and Stay (the "Second Resale Order"). In this Order, the NCUC held that marketing incentives have the effect of lowering "the actual, 'real' retail rate." Second Resale Order, p. 5. The NCUC further required BellSouth to determine "the price lowering impact of any such 90 day plus promotions on the real tariff or retail list price" and pass the benefit of such a reduction on to resellers through a wholesale discount on the "lower actual retail price." Id. at p. 6.

BellSouth filed this action on August 2, 2005 seeking declaratory and injunctive relief with respect to the two Orders of the NCUC, alleging that the Orders violate the Act. BellSouth also filed a Motion for Preliminary Injunction seeking to enjoin enforcement of those provisions of the Orders requiring ILECs to take into consideration the value of gift cards and other giveaways in the same manner that rate discounts which last longer than ninety days are considered when arriving at the wholesale rate for telecommunications services for CLPs. After a hearing on August 11, 2005, this court granted BellSouth's Motion for Preliminary Injunction. The parties have now filed their cross-motions for summary judgment.

**DISCUSSION**

BellSouth alleges that the NCUC's conclusions that BellSouth is required to offer CLPs a wholesale discount on marketing incentives (or the value thereof) in addition to the wholesale discount offered on its retail telecommunications services is in violation of the Telecommunications Act. The court reviews the NCUC's interpretations of the Act *de novo*. GTE South , Inc. v. Morrison, 199 F.3d 733, 745 (4th Cir. 1999). However, "[a] 'state agency's interpretation of federal statutes is not entitled to the deference afforded a federal agency's interpretation of its own statutes . . .'" Id. (quoting Orthopaedic Hosp. v. Belshe, 103 F.3d 1491, 1495-96 (9th Cir. 1997). The court has carefully reviewed the two Orders of the NCUC, the arguments of counsel, and the pertinent law, and concludes that the Orders of the NCUC are contrary to and in violation of the Act.

The first rule of statutory construction is that a court must look to the language of the statute. When examining the language of a statute, the court "must presume that a legislature says in a statute what it means and means in a statute what it says there." Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992). The court may look beyond the express language of the statute only when the language of the statute is ambiguous or where a literal interpretation would thwart the purpose of the overall statutory scheme. U.S. v. Tex-Tow, Inc., 589 F.2d 1310, 1313 (7th Cir. 1978).

Looking to the language of the Act, Congress' intent is plain. Section 251 (c)(4) requires an ILEC to offer for resale "any telecommunications service" it provides at retail to subscribers who are not telecommunications carriers. There can be no argument that gift cards, checks, coupons for checks, and similar types of marketing incentives are "telecommunications services." Indeed, in its First Resale Order, the NCUC conceded that marketing incentives "are

not discount service offerings *per se* because they do not result in a reduction of the tariffed retail price charged for the regulated service . . .." First Resale Order, p. 11.

As noted above, the FCC has determined that the Act's resale obligations extend to *promotional price discounts* offered on retail communications services. In its First Report and Order, the FCC stated in unambiguous terms that "promotions" refers only to "*price discounts* from standard offerings that will remain available for resale at wholesale rates, i.e., temporary price discounts." First Report and Order, ¶ 948. Had the FCC wished to include marketing incentives such as Walmart gift cards in the definition of "promotions," it could have easily done so. The marketing incentives at issue here do not give the customer a reduction or discount on the price of the telecommunications service provided by BellSouth. A customer receiving a Walmart gift card in exchange for signing up to receive certain services, for example, will pay the same full tariff price for the service each month as customers who subscribed to the service without the benefit of the gift card. Moreover, a customer cannot use a Walmart gift card or coupon to pay her phone bill. If the marketing incentive came in the form of a bill credit or other direct reduction in the price paid for a particular service, then the incentive would certainly be considered a promotional discount that would trigger BellSouth's resale obligations.

The NCUC's Orders purport to extend the definition of promotional discounts to include anything of economic value. The court believes that this interpretation is contrary to the plain language of the statute and the FCC implementing regulations. Accordingly,

IT IS THEREFORE ORDERED that BellSouth's Motion for Summary Judgment is

hereby GRANTED, and the Commissioners' Motion for Summary Judgment is hereby DENIED.


Signed: May 15, 2006

Graham C. Mullen
United States District Judge